CR 14    248

JDG:TDK/NR
F.#2011R00532

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

   - against -

MICHAEL GRIMM,

            Defendant.

– – – – – – – – – – – – – – – –X

I N D I C T M E N T

Cr. No. _____

(T. 8, U.S.C., §§ 1324a(a)(1)(A), 1324(a)(2)
and 1324a(f)(1); T. 18, U.S.C., §§ 371,
981(a)(1)(C), 982(a)(6), 982(a)(7), 1341,
1343, 1347, 1512(c)(2), 1623, 2 and 3551
et seq.; T. 21, U.S.C., § 853(p); T. 26,
U.S.C., §§ 7206(2) and 7212(a); T. 28,
U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

     At all times relevant to this Indictment, unless otherwise indicated:

I.    <u>The Defendant</u>

     1.    MICHAEL GRIMM was the managing member of, and a partner in,

Granny Sayz, LLC ("Granny Sayz"), a domestic limited liability company created on or

about November 7, 2006. According to Granny Sayz' tax filings with the Internal Revenue

Service ("IRS"), GRIMM held a 45% partnership interest in the company. Since January

2011, GRIMM has served as a member of the United States House of Representatives,

representing New York's 11th Congressional District, which includes the borough of Staten

Island and parts of the borough of Brooklyn, in New York City.

## II.   Healthalicious

2.     In numerous filings with New York State, GRIMM stated that Granny Sayz did business as "Healthalicious." Healthalicious was a restaurant located at 1594 Second Avenue in New York, New York, that served fast food and employed cooks, cashiers, and delivery persons, among other personnel. From 2007 through 2010, GRIMM oversaw the day-to-day operations of Healthalicious, which included the reporting and distribution of the restaurant's payroll. Specifically, GRIMM set the employees' rates of pay, reported their pay-rates and hours worked to Healthalicious' payroll processing companies, and distributed wages to employees. When GRIMM was not present at the restaurant to perform these tasks himself, he delegated those responsibilities to managers under his supervision and control.

## III.   GRIMM's Schemes to Under-Report Payroll and Gross Sales, and Defeat Federal and State Taxes

3.     During the period in which GRIMM oversaw Healthalicious' day-to-day operations, in order to increase the profitability of the restaurant, he engaged in schemes to fraudulently under-report the wages he paid his workers – many of whom did not have legal status in the United States – and fraudulently under-report the true amount of money the restaurant earned to both federal and New York State tax and insurance authorities.

4.     Specifically, GRIMM paid a significant portion of Healthalicious' employees' wages in cash and did not report those cash wages to federal and state authorities, thereby lowering the restaurant's payroll tax costs. GRIMM also under-reported the true amount of Healthalicious' payroll to the New York State Insurance Fund ("NYSIF"),

allowing him to receive lower monthly workers' compensation insurance premiums. In addition, GRIMM substantially under-reported the amount of gross receipts Healthalicious earned to both the federal and state governments, thereby dramatically lowering the federal and state taxes the restaurant owed and paid. In total, GRIMM concealed over $1,000,000 in Healthalicious gross receipts alone, as well as hundreds of thousands of dollars of employees' wages, fraudulently depriving the federal and New York State governments of sales, income and payroll taxes.

5.      In an attempt to conceal his schemes, in January 2013, while a member of Congress, GRIMM lied under oath during a civil deposition about his role in operating the restaurant, including falsely denying that he had paid Healthalicious' workers in cash.

IV.    Background

6.      LCK Services Corp. ("LCK") was the payroll processing company GRIMM retained to manage Healthalicious' payroll from 2007 until 2009, and My Strategic Payroll ("MSP") (together with LCK, the "Payroll Processing Companies") was the payroll processing company GRIMM retained to manage Healthalicious' payroll in 2009 and 2010. Among other things, based on the data supplied by GRIMM and others at GRIMM's direction, the Payroll Processing Companies calculated and withheld federal and state taxes from Healthalicious' employees' wages.

7.      As a restaurant that operated under the laws of the United States and New York State, Healthalicious was legally required to accurately report its gross receipts and payroll to various government entities. Several of those obligations are set forth below.

4

A.    FICA Tax

8.    The Federal Insurance Contributions Act ("FICA") required employees and employers to pay taxes on all wages employees received and defined wages to include "all remuneration for employment." The federal government used such taxes to fund the Social Security and Medicare programs that provide benefits for retirees and the disabled, among other things. As an employer, Healthalicious was legally required to withhold federal income taxes and FICA taxes from Healthalicious' employees' wages, and was legally obligated to pay the federal government a matching amount as well. Along with these obligations, Healthalicious was required to file an Employer's Quarterly Federal Tax Return ("Form 941") with the IRS accurately reporting the wages, tips and other compensation that Healthalicious' employees received, as well as the total amount of income and FICA taxes withheld from its employees' wages.

B.    Federal Income Tax

9.    Under federal law, businesses organized as partnerships, including limited liability companies such as Healthalicious, were required to file a U.S. Return on Partnership Income, IRS Form 1065 ("Form 1065") with the IRS each year. The Form 1065 required a partnership to accurately report its gross receipts and the wages it paid its employees for the tax year. To the extent that a partnership generated taxable income, such income flowed to the partners, who were required to declare that income on their personal tax returns, in proportion to their share of ownership of the company. As a partnership, Healthalicious was obligated to file true and accurate Forms 1065 each year.

C.      New York State Sales Tax

10.     New York State imposed a sales tax on the sale of all tangible goods and some services. All food and drink sales, whether sold "to-go" or eaten in a restaurant, were subject to sales tax and sales tax reporting. Businesses that sold goods and services that were subject to sales tax, including restaurants like Healthalicious, were required to register with the New York State Department of Taxation and Finance ("NYS Tax Department") as sales tax vendors. Such businesses had a fiduciary responsibility to impose a sales tax on the purchases of its customers and remit such sales taxes to the NYS Tax Department on either a monthly or quarterly basis, depending on the size of the business. Such businesses were required to accurately report the total amount of gross and taxable sales to the NYS Tax Department with their monthly or quarterly payments of sales tax. Accordingly, Healthalicious filed New York State and Local Quarterly Sales and Use Tax Returns ("Form ST-100") with the NYS Tax Department during the period 2007 through 2010. These quarterly filings purported to set forth Healthalicious' true and accurate gross sales for each quarter in which they were filed.

D.      Workers' Compensation Insurance

11.     In New York State, employers were required by law to obtain workers' compensation insurance coverage for each of their employees through an insurance carrier. Such insurance provides both medical care and weekly cash benefits to employees that had been injured while working and who therefore could not work. Insurance carriers determined the insurance rate to be paid by an employer through an assessment of a number

of factors, including the numbers of paid employees, the type or classification of the work performed by those employees, and the salary levels of the employees.

12.     NYSIF was a not-for-profit insurance carrier that offered workers' compensation insurance plans to businesses in the state. NYSIF was a New York State agency that guaranteed the availability of workers' compensation protection to employees in the state.

13.     In March 2007, GRIMM applied to NYSIF for a workers' compensation insurance policy for Healthalicious employees. The NYSIF application, which GRIMM signed, explicitly identified the size of Healthalicious' payroll as a primary factor considered by NYSIF in determining the amount of the monthly premium Healthalicious would have to pay to maintain the workers' compensation policy. The application further stated that Healthalicious "must notify [NYSIF] promptly of any change in the number of your employees or in the payroll or other remuneration paid to your employees so that we can apply the correct premium basis." In response to this application, NYSIF wrote a workers' compensation policy for Healthalicious that remained in effect from April 2007 until November 2010.

V.     GRIMM's Criminal Schemes

   A.     Under-Reporting of Healthalicious' Payroll

14.     In or about and between 2007 and 2010, GRIMM paid a significant portion of Healthalicious' employees' wages in cash, with nearly all such employees having received cash wages. Many received approximately half of their weekly pay in cash and the other half by check or through direct deposit into a bank account, while other employees

received their entire weekly pay in cash. GRIMM maintained electronic spreadsheets detailing the true payroll information pertaining to Healthalicious, which included cash wages (the "Second Set of Payroll Records"). GRIMM concealed the Second Set of Payroll Records from the Payroll Processing Companies, among others. In addition, GRIMM physically handed out cash payments to his employees on numerous occasions. Those cash payments were taken from the daily cash receipts of Healthalicious.

15.    In addition, GRIMM knowingly hired and knowingly continued to employ workers who did not have legal residency status and accordingly did not have valid authorization to work inside the United States.

16.    In order to calculate and report state and federal payroll taxes (which involved filing quarterly Forms 941 and preparing annual IRS Forms W-2, which calculated and recorded the annual wages of individual Healthalicious employees), the Payroll Processing Companies relied on Healthalicious to report to them on a weekly basis the names of the employees who had worked during the week in question, the amount of hours those employees worked, and the employees' rate of pay. As part of the fraudulent scheme, GRIMM and subordinates acting at his direction did not report the cash wages paid to Healthalicious' employees (the "Off the Books Wages") to the Payroll Processing Companies. Indeed, the Payroll Processing Companies had no record of those employees who received the entirety of their pay in cash. By under-reporting employee hours and concealing the existence of some employees – and by concealing the Second Set of Payroll Records – GRIMM caused the Payroll Processing Companies to calculate and then report less than half of the wages Healthalicious actually paid its employees.

17. From 2007 through 2011, GRIMM regularly corresponded about Healthalicious business using an AOL email account (the "GRIMM AOL Email Account"). GRIMM continued to use the GRIMM AOL Email Account through February 2013. In January 2010, GRIMM hired an individual whose identity is known to the Grand Jury (the "Manager") to help him oversee Healthalicious, including its payroll, while GRIMM campaigned for a seat in the United States House of Representatives. On numerous occasions from March 2010 through June 2010, GRIMM sent the Manager emails from the GRIMM AOL Email Account containing excerpts from the Second Set of Payroll Records, detailing how much cash each Healthalicious employee should receive for a particular week.

18. Healthalicious employed an accountant (the "Healthalicious Accountant"), an individual whose identity is known to the Grand Jury, who prepared the restaurant's Form 1065 tax returns and the New York State Form ST-100 sales tax returns, and who participated in audits that NYSIF conducted. As part of the scheme, GRIMM concealed the Off the Books Wages and the Second Set of Payroll Records from the Healthalicious Accountant.

19. By concealing the Off the Books Wages and the Second Set of Payroll Records from the Payroll Processing Companies and the Healthalicious Accountant, GRIMM caused the following false filings to occur:

      i.    FICA Tax

20. As a result of GRIMM's concealment of the Off the Books Wages and the Second Set of Payroll Records, the Payroll Processing Companies did not accurately report the true amount of wages GRIMM paid Healthalicious employees on Healthalicious'

Form 941 quarterly tax returns filed with the IRS, and did not withhold the proper amount of FICA taxes required under the law. This scheme enabled GRIMM to defeat his obligations to withhold and pay over the proper amount of FICA tax due and owing to the federal government.

ii.      Federal Partnership Tax Returns

21.     As a result of GRIMM's concealment of the Off the Books Wages and the Second Set of Payroll Records from the Healthalicious Accountant, Healthalicious' Form 1065 tax returns filed with the IRS for tax years 2008, 2009, and 2010 were each false because they did not accurately report the correct total wages Healthalicious paid to its employees.

iii.      NYSIF

22.     As a further result of GRIMM's concealment of the Off the Books Wages and the Second Set of Payroll Records, Healthalicious, through the Healthalicious Accountant and the Payroll Processing Companies, under-reported its true payroll to NYSIF, thus fraudulently lowering the monthly workers' compensation premium it paid to NYSIF under the NYSIF policy.

B.      Under-reporting of Healthalicious' Gross Sales

23.     GRIMM fraudulently concealed from the Healthalicious Accountant a significant amount of the cash sales that Healthalicious generated from March 2007 through August 2010. As a result of this concealment, GRIMM – through the Healthalicious Accountant – filed numerous false tax returns with the federal government and the State of New York.

i.     New York State Form ST-100 Sales Tax Returns

24.    From June 2007 through August 2010, GRIMM caused and authorized the filings of false New York State Form ST-100 quarterly sales tax returns with the New York State Tax Department. These false filings fraudulently concealed approximately $1.3 million in Healthalicious' gross sales over that period, causing a substantial tax loss to New York State.

ii.    Federal Partnership Tax Returns

25.    Healthalicious' Form 1065 tax returns for tax years 2008, 2009, and 2010 were each false because they did not accurately report the amount of Healthalicious' gross receipts for each tax year. As a result of GRIMM's fraudulent concealment of the restaurant's income, Healthalicious' true earnings were not reported on the Forms 1065 and consequently did not flow through to the partners of the business and were not reflected on the personal income tax returns of the partners, including GRIMM.

VI.    Concealment, Perjury, and Obstruction of Justice

26.    In January 2013, GRIMM was deposed in a federal lawsuit brought in the United States District Court for the Southern District of New York by two former Healthalicious employees who alleged that GRIMM did not pay them minimum wage or overtime pursuant to the federal Fair Labor Standards Act and the New York State Labor Laws, among other claims.

27.    In an attempt to avoid disclosing to the plaintiffs the criminal schemes he perpetrated while operating Healthalicious, GRIMM lied while under oath during the deposition in response to questions concerning his actions at Healthalicious, including: (a)

whether he paid employees in cash; (b) whether he interacted with the Payroll Processing

Companies; (c) whether he corresponded through email regarding Healthalicious business;

and (d) whether he still had access to such an email account.

COUNT ONE
(Obstructing and Impeding the Due Administration of the Internal Revenue Laws)

28.     The allegations contained in paragraphs 1 through 27 of this Indictment

are realleged and incorporated as if fully set forth in this paragraph.

29.     In or about and between April 2007 and October 2011, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant MICHAEL GRIMM, together with others, did corruptly endeavor to obstruct and

impede the due administration of the internal revenue laws of the United States through

various means and methods, including, among others, the following:

a.     paying, and causing others to pay, the Off the Books Wages;

b.     transmitting false information to the Healthalicious Accountant

that fraudulently under-reported Healthalicious' gross sales, knowing that the Healthalicious

Accountant would include such information in the Forms 1065 that were submitted to the

IRS on behalf of Granny Sayz for the tax years 2008 through 2010;

c.     filing a false personal Form 1040 tax return under the penalty of

perjury for the tax year 2008, which tax return was false insofar as it failed to report income

that GRIMM derived from his ownership of Granny Sayz;

       d.      filing a false personal Form 1040 tax return under the penalty of perjury for the tax year 2009, which tax return was false insofar as it failed to report income that GRIMM derived from his ownership of Granny Sayz;

       e.      reporting and directing others to report false payroll information to the Payroll Processing Companies, specifically, payroll figures that did not include the Off the Books Wages paid to Healthalicious employees;

       f.      causing to be prepared false and fraudulent quarterly Forms 941 that were submitted to the IRS on behalf of Granny Sayz that under-reported employee wages;

       g.      causing to be prepared false and fraudulent IRS Forms W-2 submitted to the IRS on behalf of Granny Sayz employees for the tax years 2007 through 2010, in which employee wages were under-reported;

       h.      providing and causing to be provided false wage information to the Healthalicious Accountant and concealing from the Healthalicious Accountant the Second Set of Payroll Records; and

       i.      providing excerpts from the Second Set of Payroll Records to the Manager.

       (Title 26, United States Code, Section 7212(a); Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNT TWO
(Conspiracy to Defraud the United States)

30.     The allegations contained in paragraphs 1 through 27 are realleged and incorporated as though fully set forth in this paragraph.

31.     In or about 2010, within the Eastern District of New York and elsewhere, the defendant MICHAEL GRIMM, together with others, did knowingly and willfully conspire to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental functions of the IRS, in the ascertainment, computation, assessment, and collection of revenue, specifically, payroll taxes.

MANNER AND MEANS

32.     The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

a.      paying, and causing the payment of, the Off the Books Wages to Healthalicious employees;

b.      transmitting, and causing the transmission of, false information regarding Healthalicious employee wages to be reported to MSP, resulting in the preparation of false and fraudulent IRS Forms 941 and W-2 that were submitted to the IRS;

c.      transmitting, and causing the transmission of, false information regarding Healthalicious employee wages to the Healthalicious Accountant, resulting in the preparation of a false and fraudulent IRS Form 1065, that understated wages paid to Healthalicious employees; and

d.      disseminating the Second Set of Payroll Records to the Manager, and directing him to pay the Off the Books Wages to Healthalicious employees.

33.      In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, GRIMM committed and caused to be committed, among others, the following:

## OVERT ACTS

a.      In or about January 2010, GRIMM asked the Manager to help him operate Healthalicious, which assistance required the Manager to pay Healthalicious' employees off the books;

b.      On March 23, 2010, GRIMM transmitted an email to the Manager from the GRIMM AOL Email Account, attached to which were excerpts from the Second Set of Payroll Records;

c.      On April 6, 2010, GRIMM transmitted an email to the Manager from the GRIMM AOL Email Account, attached to which were excerpts from the Second Set of Payroll Records;

d.      On April 13, 2010, GRIMM transmitted an email to the Manager from the GRIMM AOL Email Account, attached to which were excerpts from the Second Set of Payroll Records. The email further stated, "[an employee whose identity is known to Grand Jury] put the envelopes and pay checks in a bag for you";

e.      On April 21, 2010, GRIMM transmitted an email to the Manager from the GRIMM AOL Email Account, attached to which were excerpts from the Second Set of Payroll Records;

       f.      On April 27, 2010, GRIMM transmitted an email to the Manager from the GRIMM AOL Email Account, attached to which were excerpts from the Second Set of Payroll Records;

       g.      On May 11, 2010, GRIMM transmitted an email to the Manager from the GRIMM AOL Email Account, attached to which were excerpts from the Second Set of Payroll Records;

       h.      On June 8, 2010, GRIMM transmitted an email to the Manager from the GRIMM AOL Email Account, attached to which were excerpts from the Second Set of Payroll Records;

       i.      On June 15, 2010, GRIMM transmitted an email to the Manager from the GRIMM AOL Email Account, attached to which were excerpts from the Second Set of Payroll Records;

       j.      During 2010 and 2011, GRIMM caused the preparation and filing of false and fraudulent Forms W-2 for tax year 2010 on behalf of Healthalicious;

       k.      During 2010, GRIMM caused MSP, whose offices were located within the Eastern District of New York, to prepare and file false and fraudulent Forms 941 on behalf of Healthalicious; and

       l.      On July 10, 2010, GRIMM transmitted an email to the Manager from the GRIMM AOL Email Account requesting that the Manager obtain from MSP payroll information to be provided to the Healthalicious Accountant in connection with preparation of a Form 1065 tax return;

       (Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNTS THREE THROUGH FIVE
### (Aiding and Assisting in the Preparation of False and Fraudulent Tax Returns)

34.    The allegations contained in paragraphs 1 through 27 of this Indictment are realleged and incorporated as if fully set forth in this paragraph.

35.    On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant MICHAEL GRIMM, together with others, did willfully aid and assist in and procure, counsel and advise the preparation and presentation to the IRS, under the internal revenue laws, of United States Returns of Partnership Income Forms 1065 for Granny Sayz, which tax returns were false and fraudulent as to one or more material matters, in that each such tax return reported: (1) gross receipts for Granny Sayz that were substantially less than the actual gross receipts that the company received for the tax years set forth below; and (2) salaries and wages (other than those paid to partners) paid by Granny Sayz that were substantially less than the actual salaries and wages paid to employees by the company for the tax years set forth below:

| COUNT | TAX YEAR | APPROXIMATE DATE FILED | GROSS RECEIPTS REPORTED | SALARIES AND WAGES REPORTED |
|-------|----------|------------------------|-------------------------|------------------------------|
| 3 | 2008 | 08/07/09 | $507,136 | $63,693 |
| 4 | 2009 | 09/15/10 | $536,869 | $56,843 |
| 5 | 2010 | 10/31/11 | $277,191 | $36,363 |

(Title 26, United States Code, Section 7206(2); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT SIX
(Health Care Fraud)

36.     The allegations contained in paragraphs 1 through 27 are realleged and incorporated as though fully set forth in this paragraph.

37.     In or about and between March 2007 and November 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL GRIMM, together with others, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, as defined in Title 18, United States Code, Section 24(b), to wit: NYSIF, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items and services.

(Title 18, United States Code, Sections 1347, 2 and 3551 et seq.)

## COUNTS SEVEN THROUGH ELEVEN
(Wire Fraud)

38.     The allegations contained in paragraphs 1 through 27 are realleged and incorporated as though fully set forth in this paragraph.

39.     In or about and between June 2007 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL GRIMM, together with others, did knowingly and intentionally devise a scheme and artifice to defraud New York State and to obtain money and property, to wit: sales tax revenue, by means of materially false and fraudulent pretenses, representations and promises.

40.    On or about the dates set forth below, for the purpose of executing such scheme and artifice, GRIMM, together with others, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, one or more writings, signs, signals, pictures and sounds, as set forth below:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 7 | 06/08/09 | Email from GRIMM, transmitted through a computer server located in the State of Virginia to the Healthalicious Accountant, whose home office was located in the Eastern District of New York, reporting Healthalicious quarterly sales |
| 8 | 12/21/09 | Email from GRIMM, transmitted through a computer server located in the State of Virginia to the Healthalicious Accountant, whose home office was located in the Eastern District of New York, reporting Healthalicious quarterly cash sales |
| 9 | 03/22/10 | Email from GRIMM, transmitted through a computer server located in the State of Virginia to the Healthalicious Accountant, whose home office was located in the Eastern District of New York, reporting Healthalicious quarterly cash sales |
| 10 | 06/17/10 | Email from GRIMM, transmitted through a computer server located in the State of Virginia to the Healthalicious Accountant, whose home office was located in the Eastern District of New York, reporting Healthalicious quarterly cash sales |
| 11 | 9/17/10 | Email from GRIMM, transmitted through a computer server located in the State of Virginia to the Healthalicious Accountant, whose home office was located in the Eastern District of New York, reporting Healthalicious quarterly cash sales |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNTS TWELVE THROUGH FOURTEEN
(Mail Fraud -- Eastern District of New York)

41.    The allegations contained in paragraphs 1 through 27 are realleged and incorporated as though fully set forth in this paragraph.

42.    In or about and between June 2007 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL GRIMM, together with others, did knowingly and intentionally devise a scheme and artifice to defraud New York State, and to obtain money and property, to wit: sales tax revenue, by means of materially false and fraudulent pretenses, representations, and promises.

43.    On or about the dates set forth below, for the purpose of executing such scheme and artifice and attempting to do so, GRIMM did place and cause to be placed in a post office and authorized depository for mail matter, one or more matters and things to be sent and delivered by the United States Postal Service according to the directions thereon, as set forth below:

| COUNT | APPROXIMATE MAILING DATE | DESCRIPTION |
|-------|--------------------------|-------------|
| 12 | 06/22/09 | New York State Form ST-100 Quarterly Sales Tax Return mailed from Brooklyn, New York to "NYS Sales Tax Processing," Albany, New York |
| 13 | 12/21/09 | New York State Form ST-100 Quarterly Sales Tax Return mailed from Brooklyn, New York to "NYS Sales Tax Processing," Albany, New York |
| 14 | 03/23/10 | New York State Form ST-100 Quarterly Sales Tax Return mailed from Brooklyn, New York to "NYS Sales Tax Processing," Albany, New York |

(Title 18, United States Code, Sections 1341, 2 and 3551 et seq.)

COUNTS FIFTEEN AND SIXTEEN
(Mail Fraud -- Southern District of New York)

44.     The allegations contained in paragraphs 1 through 27 are realleged and incorporated as though fully set forth in this paragraph.

45.     In or about and between June 2007 and September 2010, both dates being approximate and inclusive, within the Southern District of New York, the defendant MICHAEL GRIMM, together with others, did knowingly and intentionally devise a scheme and artifice to defraud New York State, and to obtain money and property, to wit: sales tax revenue, by means of materially false and fraudulent pretenses, representations, and promises.

46.     On or about the dates set forth below, for the purpose of executing such scheme and artifice, GRIMM, did place and cause to be placed in a post office and authorized depository for mail matter, one or more matters and things to be sent and

delivered by the United State Postal Service according to the directions thereon, as set forth below:

| COUNT | APPROXIMATE DATE | DESCRIPTION |
|---|---|---|
| 15 | 09/23/09 | New York State Form ST-100 Quarterly Sales Tax Return mailed from New York, New York to "NYS Sales Tax Processing," Albany, New York |
| 16 | 09/22/10 | New York State Form ST-100 Quarterly Sales Tax Return mailed from New York, New York to "NYS Sales Tax Processing," Albany, New York |

(Title 18, United States Code, Sections 1341, 2 and 3551 et seq.)

### COUNT SEVENTEEN
(Perjury)

47.     The allegations contained in paragraphs 1 through 27 are realleged and incorporated as though fully set forth in this paragraph.

48.     On or about January 30, 2013, within the Southern District of New York, the defendant MICHAEL GRIMM, while under oath in a proceeding ancillary to a court of the United States, to wit: a deposition conducted in Regino Perez and Carlos Perez v. Granny Sayz, Healthalicious, Bennett Orfaly and Michael Grimm, Docket No. 11 CIV 8736 (CM), a case pending in the United States District Court for the Southern District of New York, knowingly made one or more false material declarations, to wit: GRIMM gave false testimony, including the following underlined testimony:

(a)     Q:     At Healthalicious did you have responsibilities for payroll?

        A:     Other than handing out the envelopes, no.

Q:      Who at Healthalicious did have responsibilities for payroll?

A:      <u>The back office, as I discussed before, described before.</u>[1]

Q:      How would the back office receive information about how much employees should be paid?

A:      Are you talking about the amount or the number of hours?

Q:      Let me ask you a different question.  Were employees paid based on the hours they worked at Healthalicious?

A:      Yes.

Q:      And was the back office provided the information about how many hours employees worked?

A:      Yes.

Q:      And how was that done?

A:      I would send the schedule to the back office.

Q:      And did you transmit to the back office any information about the pay rates of the employees?

A:      I did not.

Q:      So did the back office have that information without you needing to transmit it?

A:      <u>That's correct</u>.

*    *    *

---

[1]      Earlier in the deposition, GRIMM referenced the "back office" when he stated, "[John Doe #1, an individual whose identity is known to the Grand Jury] owned many other restaurants.  As a result, he had a corporate office set up to handle what I would consider back office operations so he would do [sic] or someone that worked for him . . . ."

(b)        Q:      Can you describe how Healthalicious worked with
                   LTK?[2]

           A:      No, because it was done out of the back office.

           Q:      So, did you have personal responsibility with working
                   with LTK?

           A:      No.

           Q:      Who would know how that information was provided to
                   LTK?

           A.      [John Doe #1].

                              *    *    *

(c)        Q:      Did you pay employees partially by cash?

           A:      No, however, there were in cash envelopes for several
                   employees because as soon as we opened, some
                   employees complained that they didn't have a bank
                   account and that it was costly and timely to go to a check
                   cashing place so as a courtesy, we often cashed their
                   check for them.  So they would get a check, but they
                   would get the equivalent in cash, they would sign their
                   check and we would just deposit the check into our bank
                   basically, again a courtesy, cashing the check for them.

                              *    *    *

---

[2]        Previously during the deposition, this exchange took place:

           Q:      What was the payroll company that you utilized?

           A:      To the best of my recollection, it was called LTK.

(d)       Q:     Did Healthalicious maintain records of the payments
made by cash?

             A:     <u>Well, they weren't cash payments we were cashing their
checks. We had the check so that was the record.</u>

(Title 18, United States Code, Sections 1623, 2 and 3551 <u>et seq.</u>)

COUNT EIGHTEEN
(Perjury)

49.     The allegations contained in paragraphs 1 through 27 are realleged and incorporated as though fully set forth in this paragraph.

50.     On or about January 30, 2013, within the Southern District of New York, the defendant MICHAEL GRIMM, while under oath in a proceeding ancillary to a court of the United States, to wit: a deposition conducted in <u>Regino Perez and Carlos Perez v. Granny Sayz, Healthalicious, Bennett Orfaly and Michael Grimm</u>, Docket No. 11 CIV 8736 (CM), a case pending in the United States District Court for the Southern District of New York, knowingly made one or more false material declarations, to wit: GRIMM gave false testimony, including the following underlined testimony:

(a)       Q:     Did you ever communicate business matters with anyone
else besides [John Doe #1] through e-mail?"

             A:     <u>Not really, almost everything was done on the phone or
in person.  I wasn't big on e-mail then.</u>

*   *   *

(b)    Q:    To the extent that they were sent to or from yourself, would e-mails concerning the Healthalicious business be in your personal e-mail account?

        A:    No. Back then I used a business account, <u>it was a Yahoo account</u>, which I haven't used in years, <u>but that would have been that one</u>, not my personal account.

        Q:    Do you still have access to that account?

        A:    <u>No, I do not.</u>

        Q:    Can you explain why you don't have access to that account?

        A:    <u>I have new e-mail and it's just outdated. I haven't used it in years. That one was probably closed in 2009.</u>

(Title 18, United States Code, Sections 1623, 2 and 3551 <u>et seq.</u>)

COUNT NINETEEN
(Obstruction of Official Proceeding)

51.    The allegations contained in paragraphs 1 through 27 are realleged and incorporated as though fully set forth in this paragraph.

52.    On or about January 30, 2013, within the Southern District of New York, the defendant MICHAEL GRIMM did knowingly, intentionally and corruptly obstruct and impede and attempt to obstruct and impede an official proceeding, to wit: <u>Regino Perez and Carlos Perez v. Granny Sayz, Healthalicious, Bennett Orfaly and Michael Grimm</u>, Docket No. 11 CIV 8736 (CM), a proceeding before the United States District Court for the Southern District of New York.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 <u>et seq.</u>)

## COUNT TWENTY
(Unlawful Employment of Aliens)

53.     The allegations contained in paragraphs 1 through 27 are realleged and incorporated as though fully set forth in this paragraph.

54.     In or about and between April 2007 and September 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MICHAEL GRIMM, together with others, did knowingly and intentionally hire for employment and continue to employ one or more aliens, whose identities are known to the Grand Jury, knowing that such aliens were unauthorized aliens, as defined in Title 8, United States Code, Section 1324a(h)(3), to wit: aliens who were not lawfully admitted for permanent residence and not authorized to be employed in the United States, with respect to such employment, and did engage in a pattern and practice of such hiring and continued employment.

(Title 8, United States Code, Sections 1324a(a)(1)(A), 1324a(a)(2) and 1324a(f)(1); Title 18, United States Code, Sections 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT SIX

55.     The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Six, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of such offense to forfeit any property, real and personal, which constitutes or is derived, directly or indirectly, from proceeds traceable to such offense.

56.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

> a.     cannot be located upon the exercise of due diligence;
>
> b.     has been transferred or sold to, or deposited with, a third party;
>
> c.     has been placed beyond the jurisdiction of the court;
>
> d.     has been substantially diminished in value; or
>
> e.     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(7); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS SEVEN THROUGH SIXTEEN AND NINETEEN

57.     The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts Seven through Sixteen and Nineteen, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

58.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

> a.      cannot be located upon the exercise of due diligence;
>
> b.      has been transferred or sold to, or deposited with, a third party;
>
> c.      has been placed beyond the jurisdiction of the court;
>
> d.      has been substantially diminished in value; or
>
> e.      has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT TWENTY

59.     The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Twenty, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(6), which requires any person convicted of such offense to forfeit any conveyance, including any vessel, vehicle or aircraft used in the commission of such offense, and any property, real or personal, that constitutes or

is derived from proceeds obtained directly or indirectly from the commission of such offense, or that is used to facilitate or intended to be used to facilitate the commission of such offense.

60.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the Court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property, which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant, up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(6); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2011R00532
FORM DBD-34
JUN. 85

No.

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF NEW YORK

### CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*MICHAEL GRIMM,*

Defendant.

## INDICTMENT

(T. 8, U.S.C., §§ 1324a(a)(1)(A), 1324(a)(2) and 1324a(f)(1); T. 18, U.S.C., §§ 371, 981(a)(1)(C),
982(a)(6), 982(a)(7), 1341, 1343, 1347, 1512(c)(2), 1623, 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 26, U.S.C., §§ 7206(2) and 7212(a); T. 28, U.S.C. § 2461(c))

*A true bill.*

_____ *Gleann Smith* _____
                                                        *Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 2014*

_____
                                                        *Clerk*

*Bail, $* _____

**Anthony M. Capozzolo, Todd D. Kaminsky, Nathan Reilly,**
**Assistant U.S. Attorneys (718) 254-6454/6367/6196**